Affirmed.

28 C.C.P.A.(Patents)

## In re CONE.

### Patent Appeal No. 4457.

Court of Customs and Patent Appeals.

June 30, 1941.

Rehearing Denied Oct. 6, 1941.

Harold L. Cook, of Portland, Or., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 75 to 79, inclusive, 81 to 111, inclusive, and 114 of appellant's application.

Appellant has moved to dismiss the appeal as to claims 75, 79, 81 to 85, inclusive, 88, 90, 91, 93, 94, 99, 101, and 102, which motion will be granted.

Two process claims have been allowed, and also one article claim.

Appellant's application relates to the manufacture of glue from animal protein. The subject matter involved is concisely stated by the examiner as follows:

"This invention relates to an animal protein adhesive product and process of producing same.

"The raw material is the conventional 'glue stock' used in the manufacture of glue or gelatine.

"In the conventional manufacture of animal glue the glue stock is hydrolyzed until at least a portion of it is soluble in hot water. Hot water or steam and alkaline

materials may be used in the hydrolysis treatment. The glue stock is then extracted with hot water and the water soluble constituents are subsequently recovered in dried form, readily soluble in hot water.

"The nature of the present invention becomes apparent when it is noted that the above hot water extraction is not employed. On the contrary, the entire glue stock, after its hydrolysis treatment, is regarded as a completed adhesive base and may be dispersed in water by mechanical disintegration, with or without the aid of alkaline chemicals, to form a liquid adhesive. The product may be dried and ground after the hydrolysis treatment, if desired, and thus rendered in convenient form for shipment and subsequent dispersion.

"If water is used in the hydrolyzing step in the present invention, it is used in restricted amount to avoid extraction of water soluble hydrolysis products.

"Steam may be used to effect hydrolysis in the present invention.

"Alkaline material may be employed in the present invention to aid hydrolysis."

The Board of Appeals in its decision, after quoting the above from the statement of the examiner, stated:

"As stated above in the conventional method of manufacturing glue, hide stock or the like, either fresh or dry, is first thoroughly washed to remove dirt, blood, etc., after which the stock is subjected to a liming operation, the collagen constituent from which glue and gelatin is extracted being slightly swelled. After thoroughly washing the stock, it is subjected to a leaching operation with successive portions of hot water. The first leaching takes place at about 140° F. and the last in the neighborhood of 212° F. The extract of the various leachings are evaporated in vacuum pans and the glue mass is then run into pans where it is chilled and dried. The patent to Reid follows this general process, but his improvement consisted generally in sterilizing the stock by heat before liming for the purpose of shortening the liming period. The Richardson patent substitutes aqua ammonia for lime so as to shorten the alkali treatment.

"In appellant's process the conventional extraction step is not followed. After the stock has been partially hydrolyzed, it is run through a mill where the stock is comminuted, which tends to release by abrasion the adhesive portion of the stock so that it may readily mix with water containing an alkali. Since the stock has not been fully hydrolyzed, it is said to be insoluble in hot water."

Claims 76 and 110 are illustrative of the subject matter defined in the claims, and read as follows:

"76. As an adhesive base, that protein matter which remains insoluble in water at 95° F., resulting from subjecting protein matter containing collagen to a degree of hydrolytic action sufficient to convert a portion only of the collagen into gelatin."

"110. The method of preparing an adhesive composition comprising dispersing in an aqueous medium the undissolved protein matter resulting from subjecting protein matter containing collagen to the hydrolytic action of heat and water, said action being sufficient to convert a portion of the collagen into gelatin and limited so that a portion of the collagen remains insoluble in water at 95° F."

The references cited are: Reid et al., 27,310, February 28, 1860; Richardson, 1,911,205, May 30, 1933.

The above quotation from the decision of the Board of Appeals sufficiently describes the disclosures of the references.

All of the appealed claims except claims 110 and 111 are product claims.

The ground of rejection of the claims by the examiner was that they fail to point out appellant's invention and do not patentably distinguish from the references cited by reason of the indefinite recitations as to the extent of hydrolysis of appellant's collagen.

The Board of Appeals in its decision expressed the opinion that appellant has produced a new product, but that the product claims before us are deemed to be too broad and indefinite, and that the method claims appear to define nothing more than the conventional liming step defined in the prior art. The board therefore affirmed the decision of the examiner with respect to the claims before us.

We are in agreement with the views of the Patent Office tribunals that the product claims before us are so broad and indefinite as to prevent their allowance.

It is true that the prior art taught the desirability of converting as much of the collagen as possible into gelatin, while appellant teaches that only a portion of the collagen should be converted into gelatin. However, the patent to Richardson states that hydrolysis is continued until the con-

version of collagen is *substantially complete,* thus clearly indicating that there would be some unconverted collagen in his final product.

The Richardson patent further states: "* * * It is not impossible that the ammonia combines to some extent with the collagen proteins; but the combination, if it occurs, apparently is not such as to modify to any considerable extent the nature of the gelatin which results from the present process."

Claims 76, 77, and 78 recite that a degree of hydrolytic action is employed to convert only a portion of the collagen into gelatin. Claims 86, 87, and 95 to 104, inclusive, describe an adhesive composition *comprising* a hydrolytic product of collagen intermediate between collagen and gelatin, insoluble in water at 95° F., or, as in some of the claims, a hydrolytic product of protein matter containing unextracted collagen, a portion of the collagen therein remaining intermediate between collagen and gelatin. Claims 105 and 106 describe as an adhesive base a reaction hydrolytic product of collagen, a portion of which is insoluble in water at 95° F. Claims 107, 108, and 109 are similar to those last discussed with respect to the collagen contained in the product. Claim 114 contains the additional limitation that the adhesive composition has a water content in excess of four times its solids content.

Many of the claims use the term "comprising," which does not exclude other ingredients in the composition, and none of the claims describe a composition *consisting* of the ingredients named in the claims.

None of the claims before us specify the amount of collagen in the glue which remains unconverted. As was stated by the Solicitor for the Patent Office in his brief, "* * * The language used is broad enough to cover any amount of this material [collagen], however small, and since these claims are insisted on despite repeated holdings that they fail to define any particular quantity, there is no reason for reading any quantitative limitation into them. If appellant desired to limit his claims to some definite amount of collagen he has had ample opportunity to do so. In view of his insistence on the present claims, it is evident that he desires claims which will be infringed by the presence of any detectable amount of collagen in the glue."

As hereinbefore indicated, in the production of gelatin from protein matter containing collagen, some collagen or an intermediate between collagen and gelatin may be found as a result of the conventional process; yet the claims before us are broad enough to include such products.

We are impressed that appellant has produced a new article, as held by the Board of Appeals, and it is unfortunate that narrower claims definitely avoiding the prior art were not presented. Appellant had full opportunity to present such claims, but for some reason did not see fit to do so. It is interesting to observe in this connection that in the process claims which were allowed a glue is described produced from collagen-containing matter, which glue has a *major* portion of insoluble product which has not been converted into gelatin. Yet none of the claims before us recite such a product.

With respect to other limitations contained in the product claims we would observe that none of them relieve the claims from indefiniteness as above discussed, and we find no such limitations that are not fairly disclosed by the cited prior art. To illustrate, many of the claims call for "mechanical disintegration" of the stock. Claim 80 defines "a finely comminuted hydrolytic product of protein matter" and by reason of the inclusion of this element it was allowed by the board. But with respect to mechanical disintegration of the stock the patent to Richardson states that the stock is "cut or shredded" and placed in a rotating drum. At a later stage of the process the patentee states that the stock is subject to occasional agitation. It seems to us that at least some degree of mechanical disintegration would result from the process disclosed by Richardson.

With respect to the process claims, Nos. 110 and 111, the board held that they define nothing more than the liming step defined in the prior art.

Appellant's specification recites: "In the glue which is the product of the present invention, the product of collagen hydrolysis is not extracted from the glue stock, the disintegration and dispersion of the undissolved portion of the glue stock being accomplished by mechanical means. This may be accomplished with commonly used grinding equipment such as hammer mills or attrition mills. *The glue stock may be ground either in a wet or dry condition before, during, or after hydrolysis. * * *.*" (Italics ours.)

It thus appears that appellant regarded it as immaterial whether the mechanical

disintegration of the non-soluble glue stock takes place "before, during, or after hydrolysis." Therefore we cannot say that the element of the claims reciting the dispersion of the undissolved protein matter remaining after hydrolysis lends patentability to the claims, as the prior art shows mechanical disintegration before and during hydrolysis. Of course, if mechanical disintegration of the insoluble glue stock has taken place, dispersion of the same in an aqueous medium would necessarily follow, according to appellant's theory, for it is admitted in his brief that in the conventional process of making an adhesive water is added to the dry animal glue until it is water soaked, and it is then melted to form a liquid.

For these reasons we find no error in the decision of the board that claims 110 and 111 lack patentability over the prior art.

To conclude, while we are impressed that appellant has invented a new product, and that perhaps his invention is not fully protected by the allowed claims, we are in agreement with the views of the Patent Office tribunals that the rejected claims are so broad and indefinite as not to patentably distinguish over the cited prior art.

We agree with the view of the Solicitor for the Patent Office that appellant's product should have been defined in the claims "in terms of its own composition rather than by indefinite allusions to its manner of preparation."

Appellant's motion to dismiss the appeal as to claims 75, 79, 81 to 85, inclusive, 88, 90, 91, 93, 94, 99, 101, and 102 is granted, and as to the remaining claims on appeal the decision of the Board of Appeals is affirmed.

Affirmed.