Rich, Judge,
delivered the opinion of the court:[1]
This appeal from the decision of the Patent Office Board of Appeals brings before us the question of the patentability over the prior, art of claims 20, 22, 24, 25 and 27 of appellant’s application serial No, 125,170, filed November 2, 1949, for “Preparation of Paper Product.” No claims were allowed.
The references said to be relied on are;
Trommsdorff, 2,315,675, April 6, 1943.
Smith, 2,343,095, Feb. 29, 1944.
Becker (British), 511,865, Aug. 25, 1939.
However, the British patent was not relied on by the examiner in his answer, or by the board, and need not be considered.
The board rejected the claims as unpatentable over Trommsdorff in view of Smith. ’'
The appealed claims are directed to a paper having high wet strength and high dry strength and to processes of making it. Claim 2.0 is the broad product claim and claim 24 a. typical broad process claim. They read as follows:
20. A paper characterized by high wet strength and high dry strength com7 prising a sheet of papermaking fibers having distributed therethrough from about 1.25% to about 3.5%, based on the weight of the fibers, of a water-solubld polymeric material selected from the group consisting of polymers of acrylic acid, polymers of methacrylie acid, copolymers of acrylic acid with acrylamide and copolymers of methacrylie acid with methacrylamide, said polymeric ma *828 terial having been rendered water-insoluble by reaction with a water-soluble polyvalent metal salt as insolubilizing agent.
24. A process for the preparation of paper characterized by high wet strength and high dry strength comprising adding to paper fibers a polyvalent metal salt as insolubilizing agent for subsequently added polymeric material, and after web formation treating the web containing the said insolubilizing agent with an aqueous solution of a water-soluble polymeric material selected from the group consisting of polymers of acrylic acid, polymers of methacrylic acid, copolymers of acrylic acid with acrylamide and copolymers of methacrylic acid with metha-crylamide to produce a paper containing from aboutT.25% to- about 3.5% of said polymeric material based on the weight of the fibers, and drying the paper.
The gist of the alleged invention as claimed, and whether claimed as a product or as a process, is the incorporation in paper of the insoluble precipitate produced from the recited water-soluble acrylic or methacrylic polymers or copolymers and the insolubilizing agent, within the specified quantity range, for the purpose of increasing its wet and dry strength.
Appellant explains that large volume products utilizing such paper are paper bags and paper towels. The high wet strength is the- more significant characteristic and has reference to. the resistance of the paper to rupture when saturated with water.
Upon analysis of the above broad claims it will be observed that the polymeric materials included in the Markush grouping are:
polyacrylic acid
polymetliacrylic acid
copolymers of acrylic acid with acrylamide
copolymers of acrylic acid with acrylamide.
The claims all contain the further limitation that all of these polymers and copolymers are water-soluble. There is also a quantity limitation that they are present in the paper within the approximate range 1.25% to 3.5%, based on the weight of the paper fibers. Finally, the polymeric. ingredient must have been insolubilized by reaction with a polyvalent metal salt.
Appellant’s application as filed stated that high wet and dry strength papers were known to the art and that it was the “usual practice” in making them to add a material to the fibers of the paper which improved its strength, which material should be soluble in water for ease of incorporation in paper stock or application to a moist paper web. The invention is stated to reside in “the addition of a polymer or copolymer of a monomer from the group consisting of acrylic acid and methacrylic acid, and treatment of the fibers with a precipitant for the copolymer such as alum or the like.” (Presumably a simple polymer would likewise be precipitated, in the absence of a copolymer.) The specification goes on to say, by way of example, that “a copolymer *829 of acrylamide and acrylic acid is prepared in dilute aqueous solution and is applied to the paper fibers subsequent to web formation.” The balance of the disclosure as to the polymeric material describes the use of copolymers of acrylic acid and acrylamide, respectively,’ in the ratios 10: 90, 25: 75, and 50: 50, in aqueous solution, and concludes with the following summary: • ’
Tbe polymeric material employed * * * comprises a polymer containing a significant proportion of acrylic acid, metliaerylic acid, or the like, for example, a copolymer of acrylic acid and acrylamide or a copolymer of meth'acrylie acid and methacrylamide, optionally with other copolymer components such as formaldehyde and the like. The appropriate copolymer is characterized by being readily soluble in and dilutable with water * * *.
If we.are to assume that this is an adequate disclosure, we must indulge in the presumption that these water-soluble materials were known in the art as of appellant’s filing date in 1949, for the specification gives no further information such as how to prepare them or where they may be obtained. Certainly appellant does not claim to have discovered them.
Applicant says he may use,.as the precipitant above referred to, any polyvalent metal salts which will form an insoluble compound with the polymeric material when added to the fibrous material. This precipitant may be added either before or after the polymeric material. His preferred precipitant or insolubilizing agent is “paper-maker’s alum,” which Hackh’s Chemical Dictionary (3d Ed.) says is aluminum sulfate, erroneously called an alum.
It is evident from the specification that what gives the desired strength characteristics to applicant’s paper is an insolubilized metal salt of the particular polymer or copolymer used, which salt has been precipitated in the paper. Where “papermaker’s alum” is the precipitant used, it will be an aluminum salt.
The only question we have to decide is whether one having ordinary skill in this branch of the paper-making art, with the-teachings of the Trommsdorff and Smith patents before him, would merely have been doing what was obvious, in view of - what they teach, in arriving at the invention claimed. 35 U. S. C. 103. As appellant states it, the sole issue is unpatentability over Trommsdorfi in view of Smith.
Appellant’s brief attempts to apply a divide and conquer stratagem to the above references, arguing that because Smith does not show what the examiner supposedly cited it for “it is proper to ignore the reference and to consider the rejection to be one involving Tromms-dorff alone.” Not only is this inconsistent with appellant’s admission that the issue before this court is patentability over both references, but this issue is one appellant asks us to review by his reasons of appeal. We are to determine this appeal “on. the evidence produced before the *830 Patent Office,” 35 U. S. C. 144, and it is proper for us, on the issue raised,- to consider, everything the two references -relied on disclose. We are not limited by the arguments which happen to have been made below with respect to that evidence. We therefore decline to ignore the Smith patent, which seems to Us a very pertinent reference.
The Smith patent is entitled “Resin Dispersion useful in the Textile and Paper Industries.” For the most part its disclosures relate to textile finishing but at the end of the specification it says, in conformity with the suggestion in its title:
Compositions, described in this invention are useful for general úse on * * * paper. The compositions * * * increase the wet strength of paper.
* * * * * * *
A primary advantage of the compositions covered in this invention is their application * * * to paper by a process of exhaustion from a dilute bath.
There are other references to paper and cellulosic fibers in the patent. As to the compositions referred to in the above quotations, the examiner said in his answer: ’
Smith shows the coating and sizing of various materials, including paper, with a mix of an acrylic acid or a copolymer, which may be of acrylic acid and acrylamide with a precipitating agent, which may be a water soluble aluminum salt.
The disclosure as to the resins is in the following passage, the interpretation of which appellant disputes:
The resin prepared in this invention may be the product of polymerization, or eopolymerization of one or more polymerizable, water insoluble, liquids. Suitable monomeric compound's for use are vinylesters, vinyl halides, vinyl esters, styrene, acrylic acid, and methacrylic acid esters, acrylonitriles, methacryloni-i triles, acrylamides and methacrylamides.
Taking this disclosure at face value, it clearly discloses, except for saying that they are water-insoluble varieties, two of the polymeric materials listed in appellant’s Markush group, viz, polyacrylic acid and copolymers of acrylic acid with acrylamide. It also suggests the use of polymerized methacrylamides and copolymers thereof with the other polymerizable materials mentioned. It falls short of mentioning methacrylic acid fer se, referring only to its esters, but it is a closely related compound. Furthermore, these polymers are suggested for use to increase the wet strength of paper. Also, the use with these resins of a polyvalent metal salt, and specifically aluminum salts, is clearly taught.
Aside from asking us to ignore this reference because of alleged errors in the use made of it below, appellant presents various arguments as to why it is non germane to the issue of patentability.
 First it is said that “acrylic acid” is not really disclosed by the abové-quoted excerpt because the comma following the specific men *831 tion of that material ought to be ignored and the words read as meaning “the esters of acrylic acid and the esters of methacrylic acid.” This argument is based on a careful study of the entire specification from which appellant arrives at what he thinks Smith probably intended to say. The argument as to what Smith intended- is very plausible and perhaps the comma was mistakenly used. But we are still faced with the fact that the patent, as published to the world, contains a disclosure of polymers of acrylic acid and copolymers thereof with other, named acrylic compounds. This would, we think, suggest their use to others unmotivated by the present interest of appellant in going behind what was said to determine what was probably meant. The literal statements made must therefore be deemed to be part of the prior art. When this argument of appellant’s was made before the board on a petition for reconsideration, the board reached a further conclusion, with which we agree, as follows:
IVe are further of the opinion that regardless of the interpretation accorded this passage the acrylic compounds disclosed by Smith are sufficiently analagous to suggest to any chemist the materials claimed by appellant.
Secondly, appellant urges upon us as a distinction that Smith’s polymeric materials are water-insoluble, whereas the claims are restricted to water-soluble polymers. We shall consider this in the course of discussion of the other reference, with respect to which the same distinction is urged.
Trommsdorff says nothing specific about increasing the wet-strength of paper. He discloses, in his brief specification, the incorporation in paper stock sized with rosin, and containing an aluminum salt “as is customary,” of polymethacrylic acid salt or the salt of poly-methacrylic acid and another polymerizable material, which polymeric salts or polymethacrylates, must be water-soluble.' It is explained that the customary use of the aluminum salt (presumably “papermaker’s alum,” the specific example being aluminum sulfate) is for the purpose of precipitating the rosin in the form of its aluminum salt and that at the same time it also causes the precipitation of aluminum polymethacrylate. Thus, although Trommsdorff starts with a soluble polymethacrylate salt, he ends up with the same type of material in the paper as one of appellant’s namely a water-insoluble aluminum salt of polymethacrylic acid, the only possible difference being some undisclosed difference in degree of polymerization. The first specific example incorporates 0.5% of sodium polymethacrylate and the second example the same amount of the sodium salt of a copolymer of 65 parts of methacrylic acid and 35 parts of methyl methacrylate. He says also that soluble salts of other copolymers in which methacrylic acid predominates may be used.
*832 Trommsdorff’s stated purpose in doing this is primarily to reduce the amount of rosin required for sizing and he says that by using 1.5% rosin plus 0.5% sodium polymethacrylate he gets the same sizing effect as with.3% of rosin. But he also states, without any further explana: tion, that Hhe mechanical properties of the paper made from the pulp are better than when rosin alone is used.” [Emphasis ours.] His specification concludes with the statement: “The salts of polyacrylic acid do not have-the same effect except to a very limited extent.”
Appellant urges two main grounds for distinguishing from this reference: (1) that he uses water-soluble polymers instead of water-soluble salts thereof and, (2) that he has a “critical’" minimum in his claims of 1.25%, compared to the disclosure of only 0.5% in Tromms-dorff.
On the first point, it is not arguable that Trommsdorff recognizes that water-solubility of the polymeric material is essential. Appellant deduces-that he used a soluble salt because he was working with insoluble polymers. Appellant’s brief says:
In the absence of any logical explanation for Trommsclorff’s salt preparation step it is most unreasonable to conclude that Trommsdorff used or had any knowledge of polymers which were water-soluble apart from their salts.
This entire line of argument overlooks, or deliberately sidesteps, one crucial point. Appelant’s specification assumes a knowledge, on the part of those skilled in the art, of the water-soluble polymeric materials of the claims. None of the ten claims originally filed mentions water-solubility so there was initially no attempt to point out this characteristic as a feature of the invention. It was introduced only after citation of the references. That it was an afterthought, as inventive subject matter, is indicated by the way the original claims were written. It begins by saying that the “usual practice” in preparing high wet and dry strength papers is to add a material to the fibers to improve strength which “for convenience of operation” is necessarily water-soluble. It then names the polymers and copolymers to be used in accordance with the invention, assuming them to be known, and says they are “prepared in dilute aqueous solution” for application to paper fibers. In speaking later of the claimed copolymers, it says, “The appropriate copolymer is characterized by being readily soluble in and dilutable with water.” That is all there is on this now all-important feature of water-solubility, which leads inescapably to the conclusion that one desiring to practice appellant’s invention has merely to select these water-soluble polymeric materials from existing sources of supply. So the patentability issue, on this score, comes down to the question of whether the references would make such selection an obvious thing to do. Wo think they would, particularly the Smith patent *833 which names materials included in appellant’s Markush group, except for water-solubility, and teaches their use for increasing the wet strength of paper.
Adverting to the point that Trommsdorff appeared to have no knowledge of the soluble polymers claimed by appellant (and Smith likewise, for that matter-,) this may well be true. Those reference patentees filed their applications nine or ten years before appellant filed his and possibly soluble polymers were not then in existence... But both Trommsdorff and Smith appreciated the necessity of distribution in the paper pulp, or on the paper fibers either by solution or dispersion, and whenever the soluble polymers did become known, we feel that it would be obvious to use them, in view of the teaching of the prior art, in making high wet and dry strength paper.
As to the minimum of 1.25%, which is now a limitation of the claims heavily relied upon, no range nor any percentages appeared in the ten original claims. Neither does the specification suggest the discovery of anything in the nature of a critical minimum quantity. After being twice rejected on Trommsdorff, which discloses, inter alia, paper containing up to 0.5% of precipitated aluminum salt of polymethacrylic acid, one of the appellant’s ultimate materials, appellant inserted the 1.25% to 3.5% range in all claims. This the examiner initially held to be new matter unsupported by the disclosure. The support for the range is said to be in an example in which two series of test results were tabulated. Each series consisted of tests on three different copolymers of acrylic acid and acrylamide containing 10, 25, and 50% acrylic acid, respectively. In the first series the percent resin on the dry paper varied from 3.03 to 3.39, in the second from 1.23 to 1.31. On these figures the new claim limitations were based, “about 1.25% to about 3.5%.” (The upper limit is of no importance here.) In the first place, these tests show nothing about the minimum applicable to the polymeric materials claimed other than the acrylic acid-acrylamide copolymers. In the second place, there were no comparative tests on untreated paper nor anything else to show that “about 1.25%” is a significant figure. In the third place, the figures themselves show us, with the aid of a little simple arithmetic, that the test on the copolymers with 10% acrylic acid in the amount of 1.23% does not meet the definition appellant asks us to accept of wet-strength paper (one retaining 15% of its dry strength when completely wetted with water) and when used in the amount of 3.03%, it fails to meet the wet-strength definition on the Mullen burst test and barely meets it on the tensile strength test. We therefore agree with the board that the “about 1.25%” minimum does not patentably .differentiate from Trommsdorff because it is not truly a significant *834 figuré. Appellant made no patentable discovery or invention with, iespect to range, so far as the record shows. At least his specification is devoid of any suggestion that he did so. What it shows is that the polymeric materials were tried out in amounts comparable to the amounts of sizing agents usually used in paper. Appellant’s brief say's of them, “In general * * * the amount is from 1-3%.”
We agree with the tribunals below that some increase in wet-strength must have been inherent in Trommsdorff’s paper notwithstanding his failure to mention it specifically. Appellant’s brief says, “Varying degrees of wet strength may be imparted to paper depending upon the end use involved.” Since we find the claimed minimum ing upon the end use involved.” Since we find the claimed minimum
We do not understand that appellant contends the process claims define a different inventive concept. Appellant has argued that Smith does not disclose treating the paper fibers in web form. Appellant’s specification teaches that the metal salt can be added either before or after the polymeric material and that the metal salt can be added either before or after web formation. We therefore see no patentable significance in the process claim limitations as to the time of addition of either material.
For the foregoing reasons we find no error in the rejection of the appealed claims and the decision of the Board of Appeals is affirmed.
O’Connell, J., was present at the argument of this case but, because of illness, did not participate in the decision.
Jackson, J., retired, recalled to participate herein in place of Cole, J., absent because of illness.

 This cause was originally decided by this court on February 8, 1957. Thereafter, counsel for appellant filed a petition for rehearing. The petition was granted March 29, 1957, solely for the purpose of permitting the court to revise certain language in its original decision.