49 CCPA

**Application of Stanley G. HALLEY.**
**Patent Appeal No. 6725.**

United States Court of Customs
and Patent Appeals.
Dec. 20, 1961.

---

Stanley G. Halley, Wenderoth, Lind & Ponack, Washington, D. C. (I. M. Aisenberg, Washington, D. C., of counsel) for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office which affirmed the examiner's rejection of claims 7, 8 and 9, all of the claims of appellant's application for a patent on "Sustained Action Pharmaceutical Tablets." The application was filed July 1, 1955.

Claim 7 is illustrative and is as follows:

"7. A sustained action pharmaceutical tablet containing an active pharmaceutical ingredient and being constituted by a tabletted intimate and substantially uniform admixture of groups of granules, each granule of each group of granules comprising said active ingredient, the active ingredient in each granule of at least one group of granules being uniformly impregnated throughout with a disintegration retardant-binder, and the active ingredient in each granule of at least one group of granules being uncoated and free from disintegration retardant additament, whereby each granule of the last mentioned group of granules may, upon coming into contact with

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

body fluid, exert its function in normal manner and at normal rate, and the surface of said tablet comprising portions of differential disintegrability when in contact with said fluid."

The references relied on by the examiner and the board are:

| | | |
|---|---|---|
| Blythe<br>filed July 18, 1952 | 2,738,303 | March 13, 1956 |
| Svedres<br>filed March 30, 1953. | 2,793,979 | May 28, 1957 |
| Lipowski (Australia) | 109,438 | Dec. 22, 1939 |

---

This application relates to a sustained action pharmaceutical tablet which can be administered orally and which will disintegrate gradually over a prolonged period of time in contact with body fluids, thereby gradually and continuously releasing medicament to the body.

The claimed tablet is most easily described in terms of its method of preparation. Tablets in their simplest form are prepared by compressing into dense tablet form a mixture of two types of granules. One type of granule is prepared from a mixture of medicament and the usual inert fillers or extenders such as corn starch and milk sugar by further admixture with a binder or granulating agent such as aqueous gelatin. The resulting mass is forced through a coarse screen and dried. A tablet prepared by compressing only this type of granule would disintegrate rapidly on contact with body fluid.

The second type of granule is prepared by admixture of medicament, the usual extenders, and a substance recited in the claim as a "disintegration retardant-binder." Appellant suggests refined shellac and a particular vinyl acetate resin as suitable disintegration retardant-binders, and suggests that they be added as methanol solutions. Methanol is removed from the mixed mass and the dry material is broken up and sized with the same size screen [1] used in preparation of the first type of granule. A tablet prepared by compressing only this type of granule would disintegrate slowly on contact with body fluid.

Appellant's claimed tablets are prepared by compressing a mixture of these two types of granules. It appears that integrity of the individual granules is retained during tabletting. The result is a tablet some regions of which disintegrate rapidly and some slowly.

Appellant also suggests that tablets be prepared from three or more types of granules, one type containing no disintegration retardant-binder and the other types containing disintegration retardant-binders which respond to body fluids at different rates. Such tablets could release medicament continuously to the body over a further controlled period of time. Appealed claim 8 differs from claim 7 in the recitation of this concept of a tablet structure containing a plurality of types of retarded granules.

Claim 9 differs from claim 7 in the recitation of the Markush group of vinyl acetate resin and refined shellac as specific disintegration retardant-binders.

The Blythe patent relates to a pharmaceutical preparation which provides for "timed release of a sympathomimetic agent over a long period of time." This preparation consists of a gelatin capsule containing numerous small pellets, each pellet comprising the sympathomimetic drug plus an extender such as sugar.[2]

---

1. A screen with 5 to 6 meshes per centimeter is recommended.

2. According to Blythe, a No. 3 gelatin capsule contained about 100 pellets when filled.

Part of the pellets are coated with a "wax-fat," preferably a mixture of glyceryl monostearate and beeswax, which is slowly digestible or dispersible in the gastro-intestinal tract. The thickness of the wax-fat coating is varied so that one group of coated pellets will make medicament available to the body before another group. In this way, Blythe claims to be able to attain a desired body level of a particular drug within one-half hour and maintain that level for approximately eleven hours.

The patent to Svedres discloses "a pharmaceutical preparation which will maintain continuously a desired therapeutic level of a selected medicament over an extended period of time, for example, as long as ten to twelve hours." Svedres teaches mixing "time delay granules" and "non-time delay granules," preferably in equal quantity by weight, and tabletting the mixture.

Svedres' "non-time delay granules" are prepared by "conventional granulation techniques" by mixing medicament with extenders such as lactose and starch, adding a granulating solution such as aqueous gelatin, forcing the resulting mass through a screen, and drying the resulting granules.

For his "time delay granules," Svedres uses a time delay material "resistant to disintegration in the gastro-intestinal tract and which will slowly disintegrate therein," preferring esters of glycerin such as the glyceryl stearates. This material is "liquified" and mixed with the medicament and extenders. The resulting hard mass is ground to a powder and granulated in the usual manner by massing with aqueous sucrose or gelatin and forcing the mass through a coarse screen. Of these time delay granules, Svedres says:

"* * * The thus formed time delay granules include the time delay material and the medicament carried in a matrix of dried solids from the dehydrated granulating solutions."

As to the final pharmaceutical preparation, Svedres states:

"The final tabletted product comprises time delay granules which include a matrix of dried solids of the dehydrated granulating solution, these dried solids on the time delay granules linking the time delay granules together to form a matrix holding the non-time delay granules.

"It will be appreciated that the nontime delay granules can be tabletted in combination with a plurality of groups of time delay granules, the groups utilizing various different time delay materials or different amounts of time delay material, or both, to provide different times of release for each group to maintain continuously a desired therapeutic level."

Lipowski is similar to Blythe in the disclosure of medicinal "bodies" 1 to 2 mm. in diameter and coated with materials "which are permeable or preferably semi-permeable to the stomach or intestinal juices, so that owing to osmotic processes the juices penetrate into the bodies which causes the bodies to swell and burst the coating or coatings, thus liberating the contents." A single dose of a drug would consist of 50 such bodies each having one to ten such coatings so that the drug would become available to the body slowly and continuously.

The following statements of Lipowski are relevant here:

"Coatings of rubber are particularly suitable because they are soft and highly elastic, next come coatings of cellulose esters, cellulose ethers, and the like such as for example nitro, acetyl, ethyl or benzyl cellulose. All these substances may be made elastic and pliable by adding softeners such as fats or wax or higher hydrocarbons such as paraffin, and the like. By adding resins such as Dammar, Sandarac, benzoin resin, mastic, shellac, colophony or tolu balsam to collodion solution or by using mixtures of such substances the resistance of the coatings can be strengthened. * * *"

The appealed claims stand rejected as being unpatentable over a combination of Blythe, Lipowski and Svedres. The examiner stated the rejection as follows:

" * * * to coat the Blythe sustained release granules in the manner taught by Lipowski and compress the granules into a sustained release tablet as taught by Svedres would certainly not involve invention. * * * "

The board appears to have agreed generally with the examiner, restating his rejection as follows:

" * * * The Svedres patent describes the tableting of groups of time delay granules with groups of non-time delay granules. The time delay granules are prepared by the solidification of an admixture of a medicament with a time delay material, such as a long chain fatty acid alcohol or ester, modified, if need be, by a wax. To substitute in such a tablet such time delay materials as the cellulose esters or resins of Lipowski, or the particular wax-fat coat material of Blythe, would seem to require no extraordinary skill by the standards of the art. Looking at these references from another viewpoint, the tableting of Blythe's coated granules according to the teaching of Svedres would not become a patentable expedient merely because the degree of "impregnation" incidental to coating the time delay particles is increased, as in Svedres, to the point where it can be described as 'uniform' ".

In the discussion of the issues in this case, the obvious similarity of appellant's tablet and that of the Svedres reference should be noted. First, we find that they both contain two or more groupings of granules. Second, in both cases, at least one grouping contains only a medicament, filler and binder, and at least one other grouping contains the medicament, filler and a disintegration retardant. Further, the tablets of each are formed in the usual manner by compressing the two,

three, or more groups of granules together to produce the final tabletted product.

Appellant claims patentability of his tablet for two basic reasons. First, he asserts that his disintegration retardant acts also as a binder. This feature is expressed in claim 7 as

" * * * the active ingredient in each granule of at least one group of granules being uniformly impregnated throughout with a disintegration retardant-binder, * *."

In other words, the medicament and filler or extender are bound together by the disintegration retardant itself and appellant maintains none of the cited references teaches this structure.

Among other things, appellant points out that the binder of Svedres is added in an additional step, i. e., the forming of a matrix of granules by immersing them in sucrose syrup after the granule containing medicament, filler and disintegration retardant has been formed. He states that this extra step differentiates his structure from Svedres since the binder in Svedres is not the retardant but the sucrose syrup.

Appellant's second reason is exemplified by claim 9 wherein particular compounds are specified as disintegration retardant-binders. Appellant urges that this limitation is not found in the references.

As to appellant's first point, it is our opinion that claims 7 and 8 read directly upon the disclosures of Svedres alone since it is our conclusion that Svedres' disintegration retardant also acts as a binder.

Example 1 of Svedres reads in part:

"The glyceryl distearate was melted. The dextro-amphetamine sulfate and lactose were mixed together and then added to the melted glyceryl distearate while stirring. After a thorough mixing of the glyceryl distearate, dextro-amphetamine sulfate and lactose, the mixture was cooled until it congealed to a hard mass, the stirring being continued as long as pos-

sible. The thus formed mass was ground and sieved through a #35 mesh screen. The sucrose syrup was added to the powder thus obtained and thoroughly mixed therewith to mass the powder. The resulting product was granulated through a #10 mesh screen. The thus formed granules were dried overnight at 37° C. and sieved through a #14 mesh screen."

It will be noted that before the material is ground and put through the #35 mesh screen,[3] it is in the form of a "hard mass." This "hard mass" consists only of the medicament, filler and retardant. We think that the binder which holds these ingredients together is the retardant because Svedres states further:

"Conventional inert fillers, such as terra alba, lactose and starch can be added to the solid medicament as desired. When reduced to a powder, before being mixed with the time delay material, the solid medicament and filler, when used, will be of a size to pass through a screen of 20 mesh or smaller in size."

This "powder" which is a mixture of dextro-amphetamine sulfate and lactose is then added to the melted glyceryl distearate (retardant) which mixture, in turn, congeals into the "hard mass." Obviously it is the retardant which acts as the binder.

Although we agree with the appellant that Svedres does include an additional step of incorporating his #35 mesh granules into a matrix of dried solids from the dehydrated granulating solution to form larger granules, such a step is not precluded by the wording of claims 7 and 8 wherein appellant chose to use the word "comprising." In re Cone, 121 F.2d 470, 28 CCPA 1282, 50 USPQ 54; In re Hunter, 288 F.2d 930, 48 CCPA 887, 129 USPQ 225.

Appellant contends that his tablet contains a group of granules which have been uniformly impregnated throughout with a disintegration retardant-binder. Assuming this to be true, we are of the opinion that the #35 mesh granules in Svedres' tablets have the same characteristic and we see nothing in appellant's process which would guarantee this uniformity any more than in Svedres'.

We affirm the rejection of claim 7.

As to claim 8, the only significant difference from claim 7 is that at least one additional group of granules containing a different disintegration retardant-binder is present. We find a similar disclosure in the portion of Svedres cited supra. Therefore we affirm the rejection of claim 8 also.

In further regard to claims 7 and 8, we note that appellant urges in his reply brief that a rejection based on Svedres alone, as urged by the solicitor for reasons *different* than those we have given, would be a new ground of rejection and hence improper. We do not agree. Appellant had an opportunity to amend his claims after the Svedres patent was cited by the Patent Office and it appears he chose not to do so. We think it is proper for this court to study the whole of the various references in the record and to apply one rather than a combination of two or three against the claims particularly since we note that the board did not distinguish among the three appealed claims in its rejection as we have done here. In re Hall, 208 F.2d 370, 41 CCPA 759, 100 USPQ 46; In re Azorlosa, 241 F.2d 939, 44 CCPA 826, 113 USPQ 156.

A different situation is present with reference to claim 9. Although, as in claims 7 and 8, the wording of the claim with regard to the over-all structure reads upon the disclosure of Svedres, there are limitations to vinyl acetate

---

3. According to "Handbook of Chemistry and Physics," 30th Edition (1947), p. 2617, a standard #35 screen has 13 meshes per cm., a standard #10 screen has 3.5 meshes per cm., and a standard #14 screen has 5 meshes per cm. Compare with footnote 1.

resin and refined shellac as the substances to be used for the disintegration retardant-binder which we do not find in Svedres or any of the other references. Lipowski does mention shellac as a substance which might be added to coatings of rubber or other materials to strengthen the coatings, but we believe that this does not teach or suggest the use of shellac as a disintegration retardant-binder with which to impregnate a medicament. We therefore reverse the board's rejection of claim 9.

For the reasons discussed, we *affirm* the board's decision with reference to claims 7 and 8 but *reverse* that decision as to claim 9.

Modified.