53 CCPA

### Application of David J. PYE and Donald K. Peterson.
### Patent Appeal No. 7513.

United States Court of Customs and Patent Appeals.
Feb. 10, 1966.

642

Harness, Dickey & Pierce, Neal A. Waldrop, Detroit, Mich., Theodore Post, Midland, Mich., for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from a decision of the Board of Appeals affirming the rejection of claim 11 in appellants' application [1] entitled "Soap Composition." One claim was allowed by the board.

The appealed claim reads as follows:

11. A lubricious composition for the skin which consists essentially of a major proportion of ingredients selected from the group consisting of non-soap anionic and non-ionic synthetic organic detergents in intimate mixture with from about 0.1 to 4 percent by weight, based on the weight of the total composition, of an acrylamide polymer, said polymer being water-soluble and selected from the group consisting of the homopolymer of acrylamide, copolymers of acrylamide with up to about 15 percent by weight of a member of the group consisting of methacrylamide, the lower alkyl esters of acrylic and methacrylic acids, vinyl chloride and vinyl alkyl ethers and copolymers of acrylamide with up to about 50 mole percent of a member of the group consisting of acrylic and methacrylic acids and the alkali metal salts thereof and said polymer being characterized by a viscosity of at least about 4 centipoises for a 0.5 percent by weight solution thereof in aqueous 4 percent by weight sodium chloride solution adjusted to a pH of 5 to 6 and a temperature of 25° C.

The invention is directed to the improvement of the cosmetic qualities of soaps, detergent compositions, and the like. The specification states:

In the manufacture of soaps, detergent compositions, shaving creams and the like and particularly those which are employed in contact with the skin, it is desirable to produce a product characterized by a quality which may be called lubricity. This quality of lubricity is of considerable importance from the cosmetic standpoint particularly with respect to the "hand," that is, with respect to the feeling experienced by the user of the product. In the case of shaving soaps, the quality of lubricity is more concretely of interest in that a shaving soap, by providing more lubricity, improves the cutting of the hair or beard with less tendency to nicking and cutting of the skin.

1. D. J. Pye and D. K. Peterson, Serial No. 687,866, filed October 3, 1957.

Further, certain powdered hand soaps currently marketed have failed to achieve wide acceptance for household use on the basis of the housewife's dislike for the unpleasant feeling of such compositions on the skin.

The references are:

| | | |
|---|---|---|
| Fikentscher et al. (Fikentscher) | 1,976,679 | October 9, 1934 |
| Touey et al. (Touey) | 2,805,205 | September 3, 1957 |

The record reveals some difficulty on the part of the Patent Office in agreeing on a statutory basis for the rejection. The examiner's answer, dated December 14, 1962, states: "Claim 11 stands rejected as lacking invention over Fikentscher et al. taken with Touey * * *." In affirming, the board remarked:

> While these acrylamides without the acrylonitrile component were not the [Touey] preferred embodiment they were, nevertheless, used in conjunction with the anionic synthetic detergent and their disclosure negatives novelty in the combination here claimed. It appears that the proportions suggested in Example 1 of Touey et al. would embrace those which are recited in the appealed claims. We will sustain the rejection of appealed claim 11 as unpatentable over Touey et al. In re Halley, 49 CCPA 793, 296 F.2d 774, 132 USPQ 16.

■ The difficulty in formulating a ground of rejection seems to have arisen from the failure to ascertain whether Touey does in fact disclose appellants' claimed composition, so to be on the safe side, language appropriate to both 35 U.S.C. 102 and 103 was employed. In close situations claims may be rejected on section 102 and, in the alternative, section 103. But such an alternative rejection does not eliminate the need for careful scrutiny of the references to determine precisely what is disclosed to the end that the applicant may be notified with the particularity required by 35 U.S.C. 132. Appellant does not seem to have been prejudiced by the confusion here, and has argued in this appeal the issues of novelty and obviousness in view of both Touey and Fikentscher. We will consider both issues.

### NOVELTY

■ So far as novelty is concerned, the only pertinent reference is Touey. The invention therein disclosed relates to detergent compositions which inhibit or prevent redeposition of soil on textile fabrics when the fabrics are washed with these detergents. Touey states:

> Our novel detergent compositions are mixtures of copolymers of acrylonitrile and an acrylamide selected from the group consisting of acrylamide and the lower alkyl acrylamides, with a detergent selected from the group consisting of the anionic detergents, including soap, and the non-ionic detergents, in ratios ranging from 1 part copolymer: 99 parts detergent to 25 parts copolymer: 75 parts detergent. Although higher proportions of the copolymer can be used, the improvement in the cleaning power was found to reach a maximum at 25 parts copolymer: 75 parts detergent. Improvement in detergency was noticeable at a ratio of 1 part copolymer: 99 parts detergent. However, the most desirable range is from 2 parts copolymer: 98 parts detergent to 10 parts copolymer: 90 parts detergent.

The examiner and the board did not contend that the polymers useful in Touey's invention came within the purview of appellants' invention but instead

relied upon certain polymers which were used by Touey as a comparison with the polymers used in his invention. The polymers relied upon were poly-*N*-isopropylacrylamide, poly-*N*-isopropylmethacrylamide, poly-*N*-methacrylamide, and poly-*N*-methylolmethacrylamide. The foregoing polymers were mixed with an anionic type detergent, the weight of the polymer being 5% of the weight of the detergent. We fail to perceive how Touey's detergent composition, containing *N*-alkylacrylamide polymers, anticipates appellants' detergent composition, containing a polymer

* * * consisting of the homopolymer of acrylamide, copolymers of acrylamide with up to about 15 percent by weight of a member of the group consisting of methacrylamide, the lower alkyl esters of acrylic and methacrylic acids, vinyl chloride and vinyl alkyl ethers and copolymers of acrylamide with up to about 50 mole percent of a member of the group consisting of acrylic and methacrylic acids and the alkali metal salts thereof * * *.

The solicitor, in his brief, states:

Appellants argue that none of the acrylamides taught by Touey et al. are acrylamide homopolymers * *, but they have given no reason why polymethylacrylamide [sic] would not be considered an acrylamide homopolymer falling within the terms of their claim.

We are not altogether sure what the solicitor means; suffice it to say that the polymers recited in appellants' claim are *not* *N*-alkylated as are those in Touey referred to by the board.

We find the invention of claim 11 to be novel.

## OBVIOUSNESS

■ With regard to the rejection of claim 11 in view of Fikentscher taken with Touey or vice versa, we consider this to have been a rejection for obviousness under 35 U.S.C. 103 despite the examiner's failure to identify it or to use the statutory language. The examiner's position was:

Fikentscher et al. teach that water-soluble poly-acrylamides may be employed in combination with soaps and other wetting agents and that the soap-polymer mixtures may be employed in cleaning operations. To adjust the ratio of polymer to soap to that claimed herein is not deemed inventive since Touey et al. show that it is old to prepare a detergent mixture of soap and an acrylamide polymer within the range claimed.

The examiner rejected appellants' contention that Fikentscher was distinguishable in that the reference did not teach a composition suitable for cleaning human skin for the reason, inter alia, that "claim 11 does not recite the intended use of the claimed polymer and therefore any argument regarding same is not deemed persuasive."

Subsequently, claim 11 was amended to recite the introductory phrase "A lubricious composition for the skin * * *." The examiner adhered to the rejection, however, stating:

However, since it is the Examiner's position that the art suggests the use of the claimed polymers in soap products to improve same * *, it is submitted that the rejections of claims 9 and 11 for reasons set forth in the Examiner's Answer are proper and should be sustained.

In affirming, the board indicated that Touey alone was sufficient to negate patentability but did not specifically reverse the ground of rejection advanced by the examiner. Accordingly, we will consider both the Fikentscher and Touey references.

The pertinent portions of Touey have been discussed supra. Fikentscher relates to the production of aqueous dispersions of "water soluble amorphous polymeric acrylic acid substances" which may serve for dispersing dyestuffs or pigments.

Included within the definition of the above-mentioned acrylic acid substances

of Fikentscher are "the products from polymerized acrylic nitrile which have been incompletely saponified or which have been saponified with ammonia under pressure, whereby amides, cyclic imines or ammonium salts, respectively, are formed." With regard to the use of soaps in conjunction with Fikentscher's dispersion, the reference states:

> By means of the viscous aqueous solutions, if desired with the co-employment of wetting agents or soaps, products which are not miscible with water such as hydrocarbons, as for example benzine, viscous hydrocarbon oils, vegetable or animal oils or fats may be made into emulsions, for example for impregnating, oiling or cleaning purposes, even in a semisolid state depending on the quantity of water employed. * * *

Appellants point out several deficiencies in the prior art teachings which they assert are fatal to a finding of obviousness. First, Fikentscher is extremely vague as to what is the exact structure of the polymers useful in their invention. While Fikentscher broadly teaches polymeric acrylic acid derivatives, including amides, these polymers are not prepared from acrylamide but rather the amide groups are introduced subsequent to the polymerization. As a result, we think it would be impossible to determine whether the polymers disclosed by Fikentscher are the same as those recited in the appealed claim. Moreover, Fikentscher is completely silent as to the molecular weight of the polymers. While Fikentscher discloses that the aqueous solution containing the disclosed polymeric acrylic acid substances may be employed in conjunction with soaps, the context in which such disclosure is made indicates a third ingredient, a hydrocarbon, is necessary and there is nothing in the reference to suggest that the various mentioned hydrocarbons are suitable as a group for use in a composition for cleaning the skin.

■ As noted above, Touey is insufficient to negate novelty in the claimed subject matter. While, as an abstract proposition, it might be possible to select certain statements from Finkentscher and mechanically combine them with Touey to arrive at appellants' claimed combination, we find absolutely no basis for making such a combination. Neither reference is directed to the problem solved by appellants' invention, namely, developing a cleaning composition for the skin having improved lubricity characteristics. In our view, only appellants' specification suggests any reason for combining the teachings of the prior art but use of such suggestion is, of course, improper under the mandate of 35 U.S.C. 103. In re Shaffer, 229 F.2d 476, 43 CCPA 758.

The decision of the board is reversed.

Reversed.