30 C.C.P.A.(Patents)

## In re BERTSCH.
### Patent Appeal No. 4672.

Court of Customs and Patent Appeals.

Dec. 26, 1942.

Rehearing Denied Jan. 29, 1943.

Hammond & Littell, of New York City (Charles P. Pollard, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the primary examiner rejecting claims 1 to 8 inclusive of appellant's application for a patent filed May 25, 1939. No claims were allowed.

Claims 1 and 5 are illustrative of the subject matter of the claims and read as follows:

"1. The sulfuric acid esters of monovalent unsaturated aliphatic alcohols containing at least 9 carbon atoms in a condition free from other sulfate and sulfonic acid groups, the sodium salts of which constitute solid water-soluble masses whose aqueous solutions have a pronounced cleansing, emulsifying and wetting-out action."

"5. A composition of matter comprising essentially a sulfuric acid ester of a monovalent unsaturated alcohol containing more than 8 carbon atoms, the water-soluble salts of which unsaturated compound constitute solid water-soluble masses possessing

wetting, cleaning and emulsifying properties."

The rejection was based upon two grounds:

1. Insufficient disclosure in appellant's application.

2. That the alleged invention is anticipated by prior patents cited as follows:

| | | |
|---|---|---|
| Siebenburger | 2,060,254 | Nov. 10, 1936. |
| Snoddy et al | 2,075,914 | Apr. 6, 1937 |
| Hailwood | 2,079,347 | May 4, 1937 |
| McAllister | 2,099,214 | Nov. 16, 1937 |

Appellant's alleged invention is described by the examiner in his Statement on Appeal to the board as follows:

"The invention claimed relates to the sulphate esters of unsaturated aliphatic alcohols having at least 9 carbon atoms in the molecule. The specification is long and contains many examples and alternatives. However, only examples 4, 6, 9 and 10 are actually pertinent to the invention claimed. These examples disclose the sulphation of oleyl alcohol, ricinoleyl alcohol, linoleyl alcohol, and oleyl alcohol, respectively. It is alleged by applicant and specified in the claims that in the sulphation reaction only the hydroxyl group of the alcohol is esterified, the unsaturated linkage remaining intact."

Appellant does not assert that the references do not disclose his alleged invention but contends that earlier applications filed by him disclose it and therefore antedate the references. Therefore it is not necessary to discuss the disclosures of the references.

Claims 1 to 4 inclusive were copied by appellant from the patent to Siebenburger.

We will first consider the first ground of rejection, viz., the insufficiency of the disclosure of appellant's application.

The examiner in his Statement discussed this subject at length and in concluding it summarized his views as follows:

"(A) There is no adequate basis for claims 1 to 8 in the present application, since no method of actually obtaining an unsaturated sulphate ester 'free from other sulphate and sulphonic acid groups' is disclosed. The only process disclosed yields a mixture containing disulphated and sulphated-sulphonated derivatives together with unsaturated sulphate esters, hence, the application does not support the claims, Section 4888, R.S., 35 U.S.C.A. § 33."

Upon this branch of the case, the Board of Appeals in its decision stated:

"The appealed claims relate to a wetting, cleansing and dispersing agent broadly of the sulphonated higher aliphatic alcohol type. It is considered that the wording of the claims limits each to an unsaturated form of the product in distinction to possible saturated form in respect to the aliphatic nucleus. This is because of the employment of the terms 'free from', 'composed of', and we believe even of the expression 'comprising essentially', the latter of claim 5.

"Claims 1 to 8 have been rejected upon the ground of insufficient disclosure. An examination of applicant's specification is not believed to show any such distinction of preparing unsaturated compounds emphasized in respect to the alkyl portion of the composition as to warrant limitation in the claims to this feature. As pointed out and discussed by the examiner, applicant's specification is long and proposes many possible alternatives. Reference to or showing of any unsaturated products appears to be largely accidental and not treated as of vital importance. This is not regarded as supporting claims which are regarded as definitely excluding saturated compounds as a main feature of novelty. It is not regarded as sufficient that one skilled in the art *could possibly* separate the saturated from the unsaturated compounds of the mixture disclosed by applicant. The disclosure must be definitely in the specification itself. This ground of rejection is affirmed." (Italics ours)

At the outset we will observe that, as is apparent from the above quotations, the questions involved are extremely technical in their nature, involving to a considerable extent an expert knowledge of chemistry and we would be warranted in reversing the decision appealed from affirming the decision of the examiner only if we are convinced that the decision is manifestly wrong.

In the case of In re Wuertz et al., 110 F.2d 854, 857, 27 C.C.P.A., Patents, 1039, which was a chemical case, we used language which we think is applicable here. We there said:

"The issue presented involves highly technical factual matters, and it is well settled that in cases of this character concurring decisions of the tribunals of the Patent Office will not be disturbed, unless it appears that they are manifestly wrong.

In re Henry Anhaltzer, 48 F.2d 657, 18 C.C.P.A., Patents, 1181, and cases therein cited; Berman v. Rondelle, 75 F.2d 845, 22 C.C.P.A., Patents, 1049."

Appellant contends that the Board of Appeals erred "in interpreting the claims as necessitating the exclusion of the possible presence of compounds other than unsaturated sulfuric acid esters of unsaturated alcohols" and also erred "in holding that there is insufficient disclosure in the present application in which the claims are sought."

Whether the language of claims containing the language "sulfuric acid esters of normal monovalent unsaturated aliphatic alcohols * * * in a condition free from other sulfate and sulfonic acid groups" should be construed as meaning that the sulfuric acid esters are themselves unsaturated is an extremely technical question. Inasmuch as both Patent Office tribunals have held that the quoted language means that the sulfuric acids described in the claims are unsaturated, we do not feel warranted in holding that such construction is manifestly wrong.

■ Moreover, we cannot say that the language of the claims is free from ambiguity, and inasmuch as claims 1 to 4 inclusive were copied from the Siebenburger patent presumably for purposes of interference, it is proper to resort to that patent to determine the proper construction of those claims. In re Jardine, 62 F.2d 194, 20 C.C.P.A., Patents, 761; In re Nicolson, 49 F.2d 961, 18 C.C.P.A., Patents, 1468.

The Siebenburger patent states:

"This invention relates to the manufacture of particularly pure sulphuric acid esters of aliphatic alcohols which are valuable assistants in the industry of improving textile materials and also valuable as intermediates for other products. It comprises the process of making these esters, as well as the esters themselves."

Two examples of the process employed are given. In the first example it is stated:

"From analytical determinations it is found that the product consists only of the sulphuric acid ester salt."

In the second example it is stated:

"In this case also it can be verified analytically that only the sulphuric acid ester is formed by the process."

■ It is therefore clear that in the claims 1 to 4, copied by appellant from this patent, the limitation "free from other sulfate and sulfonic acid groups" means in said patent that the sulfate esters claimed are unsaturated, as are the alcohols from which they are derived, and in accordance with the rule above referred to this meaning must be given to said limitation in claims 1 to 4.

It is conceded that the formula for such a compound is $CH_3$. $(CH_2)_7$. $CH=CH$. $(CH_2)_7$. $CH_2OSO_3H$. and that such formula is named in example 4 of appellant's application. However, it is not stated in said example 4 that the process there set out necessarily produces this compound.

Said example 4 reads as follows:

"Example 4:

"One hundred kgs. of oleic alcohol are sulfated at 25°C. with 80 kgs. of concentrated sulfuric acid. The mixture is poured into 150 kgs. of ice water and is neutralized by means of piperidine.

"The sulfation reactions may be illustrated by the following equations:

1.) $CH_3.(CH_2)_7.CH =$
$CH.(CH_2)_7.CH_2OH + H_2SO_4 =$
$CH_3.(CH_2)_7.CH =$
$CH.(CH_2)_7.CH_2OSO_3H + H_2O$

2.) $CH_3.(CH_2)_7.CH =$
$CH.(CH_2)_7.CH_2OH + 2H_2SO_4 =$
$CH_3.(CH_2)_7.CH_2 \text{——}$
$CHSO_4H.(CH_2)_7.CH_2OSO_3H$"

Concerning this example, we are in agreement with the following statement in the brief of the attorney for the Commissioner of Patents:

"In example 4 a certain process is described and it is then stated: 'The sulfation reactions may be illustrated by the following equations:'. Two equations follow, in the second of which sulfation of the double bond occurs, so that the resultant product clearly fails to satisfy the requirement of the claims for a sulfuric acid ester 'free from other sulfate and sulfonic acid groups.' The appellant's reliance, therefore, must be placed solely on the first equation under example 4. It is to be noted, however, that it is not stated whether the reactions of the two equations of example 4 take place concurrently or alternatively. If the former is the case, then the resultant product is not free from sulfate groups other than the sulfuric acid esters, and hence does not satisfy the claims. On the other hand, if the two equations represent alternative reactions, then

there is nothing to show how it is possible to obtain one rather than the other. A single procedure is set forth, and there is no reason to suppose that it would give one reaction at one time and another at another time. It seems clear, therefore, that example 4 does not teach how the compound here claimed may be prepared. At best, it teaches the preparation of a product containing some of this compound, with no disclosure as to how the compound may be isolated, and nothing to indicate that such isolation would be desirable. The remaining examples, as pointed out by the examiner, are even less pertinent than example 4."

The ground of the rejection of the claims by the examiner for insufficiency of disclosure was that appellant's application discloses no method of actually obtaining an unsaturated sulfate ester free from other sulfate and sulfonic groups, and that the only process disclosed yields a mixture, to quote from his statement "containing disulphated and sulphated-sulphonated derivatives together with unsaturated sulphate esters."

Appellant upon this point relies upon the statements in example 10 of his application reading as follows:

"Example 10:

"Concentrated sulfuric acid, as furic acid monohydrate, is slowly introduced and stirred into about an equal quantity of oleyl alcohol during cooling. The resulting sulfuric acid esters are purified in *known* manner either before or after neutralization to remove inorganic sulfate groups and undesirable reaction products. As a result of the cool conditions and mild sulfonation treatment the reaction product is substantially free of sulfonic acid groups and is composed of the unsaturated compound, oleyl sulfate, in admixture with a proportion of the saturated disulfate. If *so desired the two sulfates may be substantially separated by conventional procedures.* The sodium salts of these esters are water-soluble and have strong wetting, foaming, cleansing and emulsifying properties." (Italics ours)

Appellant also relies upon the following statement in his application:

"The acid reaction products obtained as described above are preferably carefully neutralized, for instance, with sodium hydroxide. Neutralization should ordinarily be carried out at relatively low temperatures, preferably in a vessel fitted with a means for cooling. The resulting alcohol salts such as sodium lauryl sulfate may be separated from inorganic components such as sodium sulfate and sodium chloride by known methods, for instance, by dissolving in ethyl alcohol, decanting or filtering, and evaporating off the solvent."

As to the language last above quoted, it obviously has no application to the separation of saturated and unsaturated derivatives referred to by the examiner.

With regard to the first of the above quotations from example 10, it will be observed that it is stated that the sulfuric acid esters may be purified in *known* manner and that the two sulfates may be substantially separated by *conventional procedures.*

It is appellant's contention that the Patent Office tribunals erred in holding that the disclosure in his application is insufficient for the reason that no separation process is stated therein. He contends that such process was well-known to those skilled in the art, and hence it was unnecessary to set it forth in the application. Upon this point appellant's brief states:

"The process of compounding is disclosed in sufficiently complete terms to enable one skilled in the art to produce and use the unsaturated derivatives whether they be used in combination with other reaction products or in purified form.

"The position of the Board of Appeals to the effect that the specification is defective in failing to disclose the separation of the unsaturated from the saturated derivatives or in failing to indicate how the purified product may be produced and how to produce it, is clearly in error.

"If the Board intended to hold that there was a lack of disclosure as to the method of separation, then its conclusions as to effect of such lack find no legal basis. The Board does not deny that one skilled in the art could effect the separation, nor did the Examiner before it (R. 22, ls. 3–9). It holds that it is immaterial that one skilled in the art could effect the separation; it must be included in the specification."

Appellant inaccurately states the holding of the board. It did not hold that "it is immaterial that one skilled in the art could effect the separation." The board's statement was "It is not regarded as suffi-

cient that one skilled in the art *could possibly* separate the saturated from the unsaturated compounds of the mixture disclosed by applicant." (Italics ours)

This was a correct statement of a principle of law many times affirmed by this and other courts.

Illustrative is the case of McCormick v. Malherbe, 116 F.2d 520, 523, 28 C.C.P.A., Patents, 838, wherein we said:

"McCormick argues more to the effect that any one carrying out the McCormick teachings and being skilled in the art would, if desirable, separately treat with fresh sulphuric acid a cracked distillate that had been previously treated with straight run sludge. If it were conceded that one skilled in the art 'might' do so, we do not think that this fact alone would justify the conclusion that the invention of the counts was disclosed in the McCormick application. Under circumstances like those at bar, for a disclosure to support interference counts, there must be more than a possibility that a certain process will be followed if the teachings are followed. There must be some positive, definite disclosure of the steps of the process, or such a disclosure of steps that if the teachings are followed by one skilled in the art the process must inevitably result. Hansgirg v. Kemmer, supra [102 F.2d 212, 26 C.C.P.A., Patents, 937]; Brand v. Thomas, 96 F.2d 301, 25 C.C.P.A., Patents, 1053.

With respect to claims 5 to 8 inclusive, appellant contends in one part of his brief that inasmuch as they were not copied from the Siebenburger patent, a different rule of interpretation should prevail and that they should be held to include an admixture of unsaturated compounds with saturated compounds. In support of this contention, appellant points to the wording of claim 5 which calls for "A composition of matter *comprising essentially* a sulfuric acid ester * * *" (Italics ours) and claims 6 and 7 which call for "* * * agents *composed of* unsaturated alkyl sulfates * * *" (Italics ours) as in claim 6, and "* * * agents composed of sulfuric acid esters * * *" as in claim 7.

Claim 8 is for "The unsaturated compound, oleyl sulfate." This language clearly brings this claim in the same group as claims 1 to 4 inclusive.

With respect to claims 5, 6, 7 and 8, appellant's brief states that they "specify the same compounds as claims 1 to 4, which correspond to Siebenburger's claims, but use the simpler terminology employed in the Bertsch application, rather than the involved wording of the Siebenburger patent."

It is therefore clear that appellant did not intend that in drafting claims 5 to 8 they should receive a broader interpretation than claims 1 to 4 but that he intended merely to use "simpler terminology."

With respect to claim 5 which contains the language "a composition of matter comprising essentially a sulfuric acid," while it is true that the word "comprising" is usually in patent law held to be synonymous with the word "including" we think that the use of the two words "comprising essentially" should receive a different interpretation, especially in view of the above quotation from appellant's brief.

It is our opinion the combination of the two words "comprising essentially" should, under the circumstances, be held to mean as in claims 1 to 4 that the composition claimed is "free from other sulfate and sulfonic acid groups."

In the case Pittsburgh Iron & Steel Foundries Co. v. Seaman-Sleeth Co., D.C., 236 F. 756, the court held that the word "essentially" in a patent claim which contained the words "comprising essentially" is not a synonym for "substantially" and when used in a patent claim means indispensably necessary; important in the highest degree.

With respect to claims 6 and 7, the words used are "composed of." These claims read as follows:

"6. Wetting, cleaning and dispersing agents composed of unsaturated alkyl sulfates, the alkyl radical consisting of a normal unsaturated aliphatic radical having more than 8 carbon atoms.

"7. Wetting, cleaning and dispersing agents composed of sulfuric acid esters of higher aliphatic primary unsaturated alcohols corresponding to the oleic acid series, the sulfuric acid radical being joined by reaction only at the carbon atoms to which the hydroxyl group was bound."

Having in mind the statement in appellant's brief hereinbefore quoted, we hold that the words "composed of" should be regarded as synonymous with "consisting of."

In the case of Hoskins Mfg. Co. v. General Electric Co., D.C., 212 F. 422, 428,

there was before the court the construction to be given the words "composed of," "formed of," and "comprising" in certain patent claims. The court said "Now, 'formed of' and 'composed of' are the same; they both mean consisting of."

While the words "composed of" may under certain circumstances be given, in patent law, a broader meaning than "consisting of," we believe that in the case at bar, they should be held to exclude in the sulfuric acids and in the unsaturated alkyl sulfates claimed the presence of other sulfate and sulfonic groups; in other words, the claims should not be given a broader interpretation than the Patent Office tribunals gave to claims 1 to 4.

It follows from all the foregoing that we are unable to find error in the decision appealed from, holding that appellant's application does not sufficiently support the claims. It is not enough that he disclosed the formula for the product claimed, but under the provisions of Section 4888 of the Revised Statutes (U.S.C., Title 35, Section 33, 35 U.S.C.A. § 33) he must file a "written description * * * of the manner and process of * * * compounding * * * it, in such full, clear, concise, and exact terms as to enable any person skilled in the art * * * to * * * compound * * * the same."

For the reasons stated, we find no reversible error in the holding of the board that none of the claims are sufficiently supported by the disclosure of appellant's application.

In view of the foregoing, it is not necessary that we pass upon the second ground of rejection of the claims, viz., anticipation of the invention by the references.

However, we think it proper to observe that we cannot find that appellant's prior applications disclose the involved invention in such manner as to entitle him to resort to them in order to antedate the references.

While it is true that some of his applications and patents disclose the formula of the composition claimed, they are even more lacking than is appellant's instant application in disclosure of any process for compounding it.

Consequently we are also in accord with the decision of the board with respect to the second ground of rejection of the claims before us.

For the reasons stated the decision appealed from is affirmed.

Affirmed.