59 CCPA

**Application of Gilbert De Wayne MILES.**

**Patent Appeal No. 8744.**

United States Court of Customs and Patent Appeals.

Aug. 17, 1972.

Ronald S. Cornell, Washington, D. C., atty. of record, for appellant. Herbert S. Sylvester, Murray M. Grill and Norman Blumenkopf, New York City, of counsel.

S. Wm. Cochran, Washington, D. C. for the Comm'r. of Patents. R. V. Lupo, Washington, D. C., of counsel.

**1402**

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and CLARK, Justice (Ret.), United States Supreme Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 10, 13–15, 18 and 24 of appellant's application entitled "Dispensing Attachment for Pressurized Containers." [1] Eleven claims have been allowed, and appellant has not appealed with respect to several additional rejected claims.

The invention relates to a heating chamber attached to a pressurized container, for example, a shaving cream aerosol container. Appellant discloses several embodiments of the heating chamber, and figures illustrating some of these embodiments are reproduced below. They are all, however, of a "fixed size" in order to keep the shaving cream in the heating chamber under essentially the same pressure as the aerosol container and thus prevent foaming of the cream until after heating. That is, the unfoamed cream is admitted to the heating chamber, heated by running hot water over the heating chamber, and then allowed to foam as it is dispensed into the user's hand.

Fig. 2

[A6207]

Fig. 4

Fig. 6

There are two principal issues on appeal. The first concerns the rejection of claims 10, 13–15, and 18 under 35 U.S.C. § 103 as unpatentable over Jolly [2] in view of Bullard. [3] Claim 10 is illustrative of the claims rejected under 35 U.S.C. § 103:

10. A dispensing attachment for a pressurized container having a dis-

charge valve comprising, a fitment having an inlet passageway, which passageway makes a pressure-tight, press-fitted, frictional connection with the hollow stem of said discharge valve, said frictional connection alone being strong enough so that the fitment is held thereby to the discharge valve in pressure-tight contact, a heat-

1. Serial No. 611,499 filed December 1, 1966 as a continuation of application serial No. 487,968 filed August 31, 1965 as a continuation of application serial No. 325,209 filed November 15, 1963, which in turn is a continuation-in-part of application serial No. 139,274 filed September 19, 1961.

2. U.S. Patent No. 3,043,484 issued July 10, 1962 on an application filed June 4, 1959.

3. U.S. Patent No. 3,111,967 issued November 26, 1963 on an application filed January 24, 1961.

ing chamber of fixed size having a heat-conductive wall and being in communication with said inlet passageway, an outlet passageway in communication with said chamber and a valve in said outlet passageway, said chamber being adapted to be filled upon actuation of said discharge valve and discharge upon actuation of said valve in said outlet passageway.

Jolly discloses a heating chamber for attachment to a pressurized container, which is best shown in Fig. 1 of that patent:

*Fig.1*

[A6206]

Shave cream enters the lower part 68 of chamber 70 through passageway 93 and exerts pressure on piston 72 which has a spring 76 seated on it to constant-

ly bias the piston in a downward direction. It is disclosed that "As the pressure builds up in the lower part of chamber 70, the piston 72 lifts, but valve element 92 remains stationary. When the valve element 92 enters the bore 84 of passageway 93, no additional shaving soap can enter the passageway 93." The entire heating chamber may then be submerged in hot water to warm the shave cream.

Bullard was relied upon by the examiner to illustrate several of the additional claimed limitations not shown by the Jolly reference, including the fact that the shape of a heating chamber may have less height than breadth.

Since we agree with the Patent Office that these various limitations would have been obvious to one of ordinary skill in the art from the art of record, we see no need to discuss Bullard further. Rather, we will concern ourselves primarily with appellant's main contention, i. e., that Jolly does not disclose a chamber of "fixed size" as called for in claims 10, 13–15, and 18.

In response to that argument, the board, on reconsideration, stated:

The heating chamber of the Jolly device has a fixed size as determined by valve member 92 and the upper end of bore 84. The claim does not exclude a maximum fixed size. Furthermore, we are still of the opinion that Jolly's warmer 26 having a container 28 presents a chamber 70 of fixed size which could be used without piston 72 and the related parts which provide control for the expanding lather.

This quote from the board's opinion indicates that two rationales were used to affirm the rejection. The first is that the Jolly chamber can be considered as having a "fixed size" as determined by valve member 92. Appellant, in his brief and at oral argument, has emphasized that the size of the Jolly chamber 70 is not in fact determined by valve member 92, but that value 92 only shuts

off the flow of shave cream from the container and piston 72 is free to rise further (for example because of additional pressures created by the heating) to the extent spring 76 permits. Appellant's interpretation of Jolly is correct; however, we still must agree with the board in its conclusion that Jolly discloses a chamber of "fixed size." While the structures disclosed by Jolly and appellant are somewhat different, we think the claim language requiring merely a "fixed size" chamber is sufficiently broad to encompass Jolly's device. In other words, we do not think the term "fixed size" precludes the existence of a movable piston inside a container such as Jolly's which necessarily has a "fixed size."

In any event, we think it would have been obvious to one of ordinary skill in the art to eliminate the piston and related parts of the Jolly device. That is the second rationale applied by the board, with which we also agree. Appellant's arguments in this regard are that there is no suggestion in Jolly of such a modification and, in fact, Jolly requires the use of a piston. Even if this were true, we still think it would be but an obvious mechanical expedient to eliminate the piston and the function it performs.

■ The second principal issue herein concerns the rejection of claim 24 under 35 U.S.C. § 112, first paragraph, since the claim limitations of "having at least one thin, wide, hollow chamber" and of the formation of a "thin wide sheet" of material are not supported by appellant's disclosure. Claim 24 was copied from a patent to Reich [4] which discloses a heating chamber formed of two plates "having a length and width substantially greater than the distance therebetween." More specifically, Reich states that:

Similarly, variations in the clearance space between the plates of the chamber of the invention in the range of 0.01 to 0.10 inch result in good heating efficiencies in connection with typical aerosol shaving foam products. Clearances greater than 0.10 inch produce lower efficiencies and also generally result in large hold-up volume and wastage of lather. * * * Preferred heating efficiencies with nominal hold-up volume and lather wastage are obtained with clearance spaces in the range of 0.010 to 0.030 inch.

The majority of the board, being of the view that the limitation of "thin and wide" in the claim copied from the Reich patent should be interpreted in view of the Reich disclosure, found that:

Whereas, in the Reich et al. patent there is a clear description and illustration of a "thin wide chamber" capable of holding a product in a thin wide sheet formation, we find no counterpart thereof in the instant disclosure. The reference to "thin" in the Reich et al. disclosure has a specific significance and a definite purpose which is not found described in the instant disclosure. To now refer to Appellant's chamber 114 [Fig. 6] as "thin and wide" is to inject into the instant disclosure a concept not originally present.

On reconsideration, one member of the board dissented as to the affirmance of the rejection of claim 24. It was his view that the terms "thin" and "wide" are broad but unambiguous, but even assuming ambiguity and looking at Reich it is seen that the broad concept therein is "a length and width substantially greater than the distance therebetween," which is equivalent only to saying "not thick." Accordingly, he was of the opinion that "claim 24 is *per se* an adequate disclosure of the term 'thin' so broadly used." Appellant, in essence, agrees with the dissenting board member.

■ We cannot agree. The terms "thin" and "wide" are relative to the extent of being definitive only in regard to the particular object referred to. Therefore, we think it necessary to look

4. U.S. Patent No. 3,171,572 issued March 2, 1965 on an application filed August 2, 1962.

to the specification in which such terms arose to determine their meaning. See, e. g., In re Hollman, 213 F.2d 323, 41 CCPA 937 (1954). Taking Reich's disclosure into consideration, we cannot but agree with the board's conclusion that there is no indication, either inherent or express, that any of appellant's chambers are even close to being "thin" as Reich uses that term.

Accordingly, we affirm the board's decision.

Affirmed.

LANE, Judge (concurring).

I agree with the majority's disposition of the rejection of claim 24 under 35 U.S.C. § 112, and I concur in the result reached by the majority on the § 103 issue in this case on the basis of the specified alternative rationale concerning the obviousness of eliminating the Jolly piston structure.

In its initial decision, the board stated:

> Appellant objects to [Jolly] because of the relative complexity of the structure disclosed thereby. * * * If the Jolly device were not designed to allow for expansion of the soap when heated, it would be as simple a structure as Appellant's.

On reconsideration, the board adhered to its view that Jolly's chamber had a maximum fixed size. However, the board added:

> Furthermore, we are still of the opinion that Jolly's warmer 26 having a container 28 presents a chamber 70 of fixed size which could be used without piston 72 and the related parts which provide control for the expanding lather.

Although not articulated with the utmost clarity, the position of the board which emerges from these passages is that the elimination of the piston and related parts of Jolly's device would have been obvious to one of ordinary skill in the art. It is clear that appellant recognizes this to have been the board's view because in his brief, he specifically argues that such a change would not have been obvious since it would be in contradiction to the teachings of Jolly and unsupported by any suggestion or motivation disclosed in this reference.

As I understand it, Jolly utilizes the spring-biased piston to avoid a dangerous and undesirable pressure build-up in the container during heating. Other than that, I fail to see any difference in operation between the Jolly apparatus and that claimed. Since there is no size limitation in appellant's claims, the maximum size of the Jolly chamber can be the same as the fixed size of appellant's chamber. In such a case, the pressure on the liquid, necessary to maintain appellant's liquid in the unfoamed state, is at least as great in Jolly's chamber as it is in appellant's. The difference is that Jolly has taken a precaution against excessive pressure build-up whereas appellant has foregone such a precaution. I think sacrificing the extra advantage achieved by Jolly by deleting the structure which yields that advantage would have been obvious to one of ordinary skill in the art.

Appellant's primary arguments against such a modification of Jolly are that it lacks suggestion in the specification and is contrary to patentee's inclusion of the piston elements in the Jolly apparatus. I think both arguments are correct, but fail to compel a conclusion of nonobviousness. The inquiry under § 103 is broader than that implicitly urged by appellant. Under the general test enunciated by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the obviousness or nonobviousness of claimed subject matter is determined against the background of the prior art, the differences between the claimed invention and the prior art, and the level of ordinary skill in the pertinent art. This court has held that a tentative conclusion of obviousness may be drawn if

the "reference teachings would appear to be sufficient for one of ordinary skill in the relevant art * * * to make the proposed * * * modification." In re Lintner, 458 F.2d 1013, 1016, 59 CCPA —, — (1972). These conformable tests do not *require* that the reference specifically motivate the modification. The motivation may well come from the person of ordinary skill if the level of skill in the art is adequate. I think that such is the case in this appeal.

In my view, one of ordinary skill in the relevant art would recognize the ways in which Jolly's apparatus advance the art. Inherent in that recognition is an appreciation that the omission of elements will result in a concommitant loss in advantages. Thus, this court has previously held that where an additional feature disclosed in the prior art reference is not desired, it would ordinarily be an obvious matter to eliminate it and the function it performs. In re Larson, 340 F.2d 965, 969, 52 CCPA 930, 935 (1965). I am convinced that Jolly renders obvious the subject matter here on appeal.

Appellant might have shown, if possible, that the danger Jolly feared was nonexistent, or that Jolly's structure fails to remove the danger. Appellant might have proved that in guarding against the danger of high pressure, Jolly forfeited many benefits which unexpectedly attend the simpler claimed apparatus. These are facts that come to mind which might have been proved to rebut the assumption on which this obviousness rejection is founded, i. e., that the elimination of the piston structure is effected at the sacrifice of the advantages that flow from its inclusion. No such evidence is of record, and in its absence, I would affirm on the stated ground.

RICH, Acting Chief Judge (dissenting in part).

I agree with the majority's disposition of claim 24, the rejection of which is affirmed.

I disagree with the affirmance of the rejection of claims 10, 13–15, and 18 because I cannot agree with the fact finding on which the sole rejection was based, as I read the file history. That fact finding was that Jolly disclosed a heating or pressure chamber "of fixed size," which is a positive limitation of all of these claims. The majority does not think that the functioning of Jolly's piston 72 precludes the existence in his device of a heating chamber of fixed size, but I do.

The board, with whose view the majority agrees, prevaricated on this question. It said that

* * * Jolly's warmer 26 having a container 28 presents a chamber 70 of fixed size which could be used without piston 72 and the related parts which provide control for the expanding lather.

That argument disregards or rebuilds the Jolly structure, which we must contemplate as it is described. While it is true the chamber 70 is of fixed size it is not chamber 70 which contains lather or heats it or holds it under pressure. It is therefore not the heating or pressure chamber. The major portion of chamber 70 merely serves to house the spring and guide the piston rod; it could as well be open at the top because this portion contains no lather at any time and is under no pressure. The heating or pressure chamber of Jolly is chamber 68 which is the space in the lower portion of chamber 70 enclosed at the top by the piston. The essential feature of the structure is that the piston moves, *varying* the volume of this space or chamber. On this point the board said, "The claim does not exclude a maximum fixed size." This is a self-contradictory statement. If it has a maximum it must have a minimum. A chamber which varies in size between the maximum and a minimum certainly is not of "fixed size," if this term has any meaning at all. That which varies is not fixed.

The majority has merely agreed with the board; it has presented no better

argument. I do not think it can. I think it errs.

As for the majority's alternative rationale, I can find no support for it in what transpired below, and I would not, therefore, affirm a rejection which I believe was never made. As I wrote for Judge Lane and myself earlier this term, "We do not conceive that it is part of our duty to make better rejections for the Patent Office * * *." In re Arkley, 455 F.2d 586, 589, 59 CCPA ——, —— (1972). The fact that appellant, out of an abundance of caution, argued the point does not bring it before us if the rejection was not made below with the clarity contemplated by 35 U.S.C. § 132. In re Benson, 441 F.2d 682, 684–686, 58 CCPA 1134, 1137–1141 (1971), cert. granted on other grounds sub. nom. Gottschalk v. Benson, 405 U.S. 915, 92 S.Ct. 934, 30 L.Ed.2d 784 (1972); and In re Ludtke, 441 F.2d 660, 662, 58 CCPA 1159, 1164 (1971) (Almond, J.).